```
                        UNITED STATES DISTRICT COURT
                         NORTHERN DISTRICT OF OHIO
                              EASTERN DIVISION


    UNITED STATES OF AMERICA,        Case No. 5:20-cr-262
                                     Cleveland, Ohio
              Plaintiff,

         vs.                         TUESDAY, SEPTEMBER 29, 2020

    CHRISTIAN FERGUSON,

              Defendant.



             TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
                   HELD VIA ZOOM VIDEOCONFERENCE
            BEFORE THE HONORABLE SOLOMON OLIVER, JR.
                    UNITED STATES DISTRICT JUDGE



    APPEARANCES:

    For the Government:          Om M. Kakani,
                                 Assistant United States Attorney


    For the Defendant:           Carolyn M. Kucharski,
                                 Assistant Federal Public Defender





    Chief Court Reporter:        Sarah E. Nageotte, RDR, CRR, CRC
                                 United States District Court
                                 801 West Superior Avenue
                                 Court Reporters 7-189
                                 Cleveland, Ohio 44113
                                 (216) 357-7186


     Proceedings recorded by mechanical stenography, transcript
              produced with computer-aided transcription.
```

```
 1                    (Proceedings commenced at 3:33 p.m.)
 2                                  - - -
 3                    THE COURT:  Good afternoon.
 4         Is everybody ready?
 5                    MR. KAKANI:  Yes, Your Honor.
 6                    COURTROOM DEPUTY:  Call the case?
 7                    THE COURT:  Yes.
 8                    COURTROOM DEPUTY:  Your Honor, the case before
 9    the Court carries Case Number 5:20-cr-262, United States of
10    America versus Christian Ferguson.
11                    THE COURT:  Good afternoon.
12         Will counsel for the United States introduce himself
13    for the record.
14                    MR. KAKANI:  Yes.  Good afternoon, Judge.
15         Om Kakani on behalf of the United States.  I am here
16    on behalf of AUSA Duncan Brown.
17                    THE COURT:  I didn't mean to say herself.  I
18    think I said herself, but --
19                    MR. KAKANI:  No worries, Judge.
20                    THE COURT:  Will counsel for defendant
21    introduce herself for the record.
22                    MS. KUCHARSKI:  Carolyn Kucharski on behalf of
23    Christian Ferguson.
24                    THE COURT:  All right.  And the court reporter
25    is present and taking down what we say.  And my courtroom
```

1     deputy is also present.

2     　　　　And, Mr. Ferguson, Mr. Christian Ferguson, you are

3     present by way of Zoom videoconference today also.

4     　　　　Isn't that correct?

15:35:04  5     　　　　　　　THE DEFENDANT:  Yes, Your Honor.

6     　　　　　　　THE COURT:  All right.  We're holding this

7     conference by Zoom, Zoom videoconference, because we're not

8     holding in-court proceedings now.  I haven't been holding

9     any.  And the reason -- the reason is because of the

15:35:22 10     coronavirus.  And that's pretty consistent throughout our

11     court.  There may be a few exceptions made for compelling

12     reasons, but, really, because of the virus, our orders say

13     very clearly that we are not to hold in-court proceedings,

14     so that's why we're doing this by videoconference.

15:35:44 15     　　　　I set this down, Mr. Ferguson, because I had received

16     letters from you and other requests.  Normally, of course, a

17     defendant will speak through his or her counsel.  So if

18     there's a request or a motion, then you will communicate

19     that through your counsel, your counsel will advise you as

15:36:14 20     to whether it makes sense to do what you're asking, then you

21     will come to some decision about whether you will move

22     forward through counsel.

23     　　　　But we normally are not -- I'm not taking letters or

24     other kind of information from defendants, but I'm normally

15:36:36 25     looking to counsel for a lot of reasons.  One is because

1 counsel is familiar with the Court, how the Court operates.
2 Counsel knows how to put requests into proper form. The
3 other is that if you communicate too much, you may very well
4 communicate some things that you don't want to reveal to the
5 Government. And I'm not saying you have to be secretive
6 about anything, but it's just that you have to use
7 discretion in terms of your communications.
8 You should be aware that when you communicate with me
9 that it's not confidential. I don't have confidential
10 relationships with the parties or their counsel. So
11 anything that you share with me, I'm free to share that with
12 the parties. And, you know, I'm trying to protect you by
13 suggesting that you work in the normal way.
14 Now, I don't mean to say that there is never a time
15 when a defendant should contact the Court or should try to
16 communicate with the Court in writing, I can't say there's
17 never a time because sometimes there's a compelling reason,
18 and if a defendant feels that he or she has no other
19 recourse and they cannot request the Court -- I'm sorry --
20 they don't feel they can request through their lawyer that
21 the Court hold a hearing or the Court would convene a
22 proceeding to hear their issues.
23 So I'll stop there, but I wanted to be clear at the
24 beginning that -- that that's a normal process.
25 Now, I know you know the coronavirus has been -- has

1 been a problem for us all, and we try to work through it,

2 but it has been a problem. Before I hear from you, the

3 things that are on your mind, I'd like to hear from Ms.

4 Kucharski in terms of the status of the case, things that

15:38:53 5 have been going on throughout the case, whether there have

6 been any discussions about possible pleas, those other kinds

7 of things before I hear from Mr. Ferguson.

8         MS. KUCHARSKI: Your Honor, I have received

9 discovery from the Government, and discovery is complex in

15:39:11 10 the format that they provided it to the defense, which we

11 discussed at an earlier pretrial.

12 And I know, or I believe, that that's one of the

13 sources of frustration for Mr. Ferguson. Although, I did

14 place some discovery on a CD and had that sent down to CCA

15:39:32 15 so he could begin to review some of that discovery.

16 I have had discussions with the Government by way of

17 where they saw Mr. Ferguson's guidelines, and these were

18 with Mr. Brown, not Mr. Kakani, and there are -- I should

19 say, there's a big difference where each side sees the

15:40:01 20 guidelines.

21 I have been in communication with Mr. Ferguson, but I

22 will agree that our communications are very unproductive.

23 We just, you know, have not managed to work past some

24 issues, to the point now where I understand he placed in the

15:40:27 25 letter that he wanted to have me removed from the case and

1  have new counsel appointed.

2  And while I don't normally take those things lightly

3  or -- or concede that there should be new counsel, in this

4  case, because we just really cannot or have not been able to

5  communicate at all, and, you know, most of the time he's

6  hanging up on me, and I will admit, too, that I lost my

7  temper with him as well, I almost think that it's beneficial

8  at this point for him to have new counsel.

9  We have a very big disagreement. And this is one of

10 the things that we cannot get past. As the Court's aware, I

11 filed a previous motion for bond, which was denied by the

12 Court. And Mr. Ferguson believes that I have to file

13 another bond motion every 30 days. And I basically told him

14 that I was not going to do that, and that's a big issue

15 between us and we can't ever really move past that because

16 he's fixated on that.

17 THE COURT: Well, one of my concerns -- I'll

18 hear you out -- but one of my concerns would be, what if I

19 appointed a new counsel and it sounds like we may have the

20 same problems?

21 Because when a lawyer is a professional, he is not

22 going to do necessarily whatever he or she is told to do if

23 they feel like there is no reasonable basis to do it.

24 Lawyers are an officer of the Court and if you know,

25 for example, filing a motion for bond every 30 days is not

|  |  |
|---|---|
| 1 | likely to enure to anybody's benefit, then you're not likely |
| 2 | to file one.  And I don't know of any counsel, maybe there |
| 3 | is somebody, who would do such a thing. |
| 4 | So if those are the kinds of requests that are making |
| 15:42:35  5 | it difficult for you to work with Mr. Ferguson, then he |
| 6 | might as well stay with you because I don't think that other |
| 7 | lawyers would be listening to that either. |
| 8 | MS. KUCHARSKI:  Well, and I -- and I |
| 9 | understand the Court's point, Your Honor. |
| 15:42:48 10 | That's just one example.  And I almost feel like, you |
| 11 | know, maybe he'd be more receptive to a male lawyer or |
| 12 | another lawyer telling him that, you know, I'm not telling |
| 13 | him things that are not true. |
| 14 | So I -- I just think -- you know, I guess we'll hear |
| 15:43:11 15 | from Mr. Ferguson and see what his thoughts are, but -- |
| 16 | THE COURT:  Do you have the impression it's a |
| 17 | male/female issue? |
| 18 | THE DEFENDANT:  No, I don't.  I'm sorry. |
| 19 | MS. KUCHARSKI:  I -- |
| 15:43:23 20 | THE COURT:  Let her finish. |
| 21 | MS. KUCHARSKI:  I believe that's part of it. |
| 22 | THE COURT:  All right.  Because I'll hear from |
| 23 | him, but I have no tolerance for that.  You know, the female |
| 24 | lawyers who come before the Court should be presumed equally |
| 15:43:44 25 | competent as any male lawyers, and, in my experience, that's |

Case: 5:20-cr-00262-SO Doc #: 71 Filed: 12/05/21 8 of 16. PageID #: 469

8

1  not a dividing line between whether you're a male or a
2  female.
3  But I understand what you're saying, Ms. Kucharski.
4  Don't misunderstand me. I understand you.
15:43:58 5  Mr. Ferguson, you may speak. Be careful not to reveal
6  any confidences -- any confidential information that could
7  be detrimental to your case in doing so.
8  THE DEFENDANT: Yes, Your Honor.
9  Mainly, I don't see a problem with the gender.
15:44:16 10  There's nothing, like, just because Ms. Kucharski is a
11  female, I don't see that as a problem.
12  The problem I'm having is that mainly every time I try
13  to call, the beginning of May, I was always getting cussed
14  out saying: I did file blank and blank.
15:44:29 15  And then, also, every time I -- I try to hold my
16  tongue and I don't swear or anything like that, but every
17  time I try to ask her: Can we put this in the bond?
18  Because I'm looking on the computer, because we have a law
19  library, and I was trying to look on the computer, like,
15:44:43 20  trying to find ways I can help to defend myself and do
21  whatever I can, and I was trying to say that, but she
22  wouldn't include any things into my bond when I put the
23  first motion in.
24  And then, mainly, when I was -- I talked with --
15:44:53 25  there's counselors here that you can talk about your case

1  with confidentially and they -- I was trying to tell them
2  what can -- what type of things can I do to prove my
3  innocence and everything, and when I try to bring that to
4  Ms. Kucharski, I never could -- it was always butting heads.
5      It -- usually, whenever I tried to call, I even tried
6  to call my grandmother and, like, say -- I try to tell her
7  what's going on, like, why this -- I -- like, I need to find
8  a new lawyer because, mainly, every time I call, nothing is
9  being put in.
10     I wasn't saying to put a bond motion in every 30 days.
11 I simply saw on the Bail Reform Act that I -- that I looked
12 on the law library that every 30 days that a defendant can
13 apply. I wasn't saying I was going to do it every month for
14 May, June, July.
15     It's mainly -- I meant to put one in in May because
16 I'm trying to get my address confirmed, I just needed to get
17 the phone number after so I was ready to go, but once it got
18 denied, I realized I had to wait at least 30 days and try
19 again.
20     But in my second motion, like I had wrote to you, I
21 was trying to prove to you in saying that this is what I
22 have proven, this -- and I give you a background of what I
23 am. I'm not what the Government is trying to say I am. I'm
24 not that type of person. I was trying to put that into my
25 first motion, but, unfortunately, it was failed to do so.

1  The only thing I got to put -- the problem with the
2  first motion, I feel it was rejected is why -- because it
3  looks like I'm just some young kid just trying to say you
4  can let me out because I have a history of asthma. I was
5  trying to say there was more reasons behind that, but,
6  unfortunately, I didn't get to express every last reason.
7  And that's the reason why I felt I had to get new
8  counsel, because I feel like the counsel doesn't really care
9  about my case truly, and, really, I'm trying to fight for my
10 life. I don't want to spend life in jail or any time -- any
11 more time in jail for something I didn't do, and I was
12 trying to express that, but, unfortunately, I never could
13 get that through to you. That's the reason I was thinking
14 that it's best if I just get a new lawyer.
15 But there's no prejudice. There's no -- like I said,
16 I don't see a problem with no race, no color. I've [Zoom
17 audio interference] Rastafari and I don't see a gap in
18 anything just because you're male or female, black, white,
19 Asian. It doesn't bother me at all. So I just want that on
20 the record. I don't see that as an issue. That's not an
21 issue.
22 The issue is, the reason I want a new lawyer is
23 because I want someone who is actually going to fight for me
24 and actually can see that I am trying to tell the truth, not
25 just someone looking at me like I'm just another number or

1	statistic, because I'm not.

2	             THE COURT:  Okay.  Let me -- let me just make
3	a couple of comments, and then I'll decide about whether you
4	get a new lawyer or not.

15:47:10  5	    I hear what Ms. Kucharski has said about she perhaps
6	thinks that might be a better course too.

7	    One, there's no question, lawyers should be
8	professional and they should treat people courteously.  But
9	I can tell you this, the lawyers know, and they don't have
15:47:29 10	to take abuse from people that they're defending, and they
11	don't have to -- you know, hanging up and all that kind of
12	stuff on them, that is not to be tolerated by any lawyer who
13	is working in the federal court.  I don't believe that they
14	would put up with it.

15:47:51 15	    The second thing, they're likely to be turned off --
16	it doesn't mean that you ever turn your back on good
17	information, but the likelihood to be turned off and hearing
18	continually about what someone in the jailhouse is telling
19	you about how you can defend yourself, most lawyers are
15:48:10 20	going to be totally turned off by that, because they're
21	lawyers and they're there to defend you and they know how to
22	put together a case.

23	    And a lot of stuff, the advice that you get down
24	there, gets your head thrown off, and that's hard for
15:48:25 25	somebody to put out for you.  That's going to be a fact.

|||
|---:|---|
| 1 | The first thing that's going to happen, if you get a |
| 2 | new lawyer, they're going to be very strict with you. |
| 3 | They're going to sit down and they're going to tell you: |
| 4 | Look, I'm here to defend you.  I've been a lawyer for 20 |
| 15:48:39  5 | years, 25 years.  I've handled these kinds of cases, many of |
| 6 | them.  Now -- and I know how to go about defending you the |
| 7 | best I can.  I don't -- I'll listen to you.  You tell me |
| 8 | what you think, and then I'll tell you what I think you |
| 9 | should do. |
| 15:48:54 10 | There's two different things:  You tell me what you |
| 11 | think and I tell you what you should do.  Then you're going |
| 12 | to have some respect for the person who is telling you, |
| 13 | based on the experience, what you should do. |
| 14 | It doesn't go like they're going to -- it's your case, |
| 15:49:09 15 | you're right, and if you want your case, then the lawyers |
| 16 | will give it to you.  You will handle it by yourself.  You |
| 17 | won't have a lawyer, period, after a while. |
| 18 | So I just want you to know there's something about |
| 19 | what you're saying, these bond motions, you seem to kind of |
| 15:49:26 20 | just rattle them off and file them every so often, that |
| 21 | doesn't do a bit of good.  If you're going to file a bond |
| 22 | motion, a new bond motion, you're going to have to have some |
| 23 | new, compelling information in it that wasn't available |
| 24 | before and wasn't presented before.  You can't assume that |
| 15:49:46 25 | you keep filing them, you're going to get it. |

1    Now, I'm not saying you'll never get it on the second
2    chance. I'm not saying that. Because I won't prejudge a
3    motion. So I'm just trying to tell you, you can't have an
4    attitude or you'll be dashed down. The good lawyers I know
5    will not put up with it and they will tell you point-blank:
6    I'm not doing it, because what you're giving me to do,
7    asking me to do is going to, at least if it doesn't hurt
8    your case, it's not going to help you.
9    And sometimes they will tell you: This is going to
10   hurt your case because all it will look like is that you're
11   just throwing papers at the Court, and they have credibility
12   that they have to have with the Court if they want to be
13   viewed as effective. Nobody is going to respect a lawyer
14   who just files anything that a defendant tells him to file.
15   It's not going to happen.
16   I'm just trying to tell you that. You'll be butting
17   heads with the next lawyer as much as you butted heads with
18   Ms. Kucharski if you take that position.
19   Now, I'm going to give you a new lawyer, but I'm going
20   to tell you what, I don't feel like I have to give you a new
21   lawyer under the law. Let me be clear. I want you to have
22   a lawyer of your own choosing, so to speak, and -- but I've
23   appointed a lawyer for you, I appointed a competent lawyer
24   for you.
25   What I hear from her and from you doesn't tell me that

1   she's not doing her job.  It does tell me that you've got
2   some differences.  I'm not sure they're irreconcilable.  But
3   I will err on the side of making sure that you have somebody
4   that you would like to have.  I will err on that side.
5       So I don't know at this moment who the new counsel
6   will be.  I'll have to look over the roster and appoint you
7   new counsel, and then I'll inform you -- I'll inform new
8   counsel that they have your case and they'll be in contact
9   with you.
10      That's what I intend to do --
11              THE DEFENDANT:  Okay.
12              THE COURT:  -- based on your request.
13      I want you to have another opportunity to confer with
14  a lawyer, and I don't want you to continue to feel like Ms.
15  Kucharski is not selling your case or that there's some
16  problems in your case because of her.  I haven't found any
17  problems with her representation, but I don't want you
18  feeling that way.
19      I want you to start out fresh with somebody new, tell
20  them what's on your mind, and then you've got to respect
21  them, because they're not you, they're your lawyer.
22      You understand that?
23              THE DEFENDANT:  Yes, Your Honor.
24              THE COURT:  Now, you know what happens when
25  you get a new lawyer?  It means that it will take a bit of

|  |  |  |
|---|---|---|
|  | 1 | time for the new lawyer to get up to speed before they can |
|  | 2 | then move ahead.  That means that they've got to get all the |
|  | 3 | information from Ms. Kucharski.  They've got to get all the |
|  | 4 | discovery.  They've got to become familiar with it.  And |
| 15:53:03 | 5 | then they've got to get in touch with you and become |
|  | 6 | familiar with you, what you're interested in doing.  And so, |
|  | 7 | it's going to take some additional time. |
|  | 8 | You understand that? |
|  | 9 | THE DEFENDANT:  Yes, Your Honor. |
| 15:53:14 | 10 | THE COURT:  All right.  Ms. Kucharski, are you |
|  | 11 | satisfied with this outcome? |
|  | 12 | MS. KUCHARSKI:  Yes, Your Honor. |
|  | 13 | THE COURT:  All right.  Mr. Kakani, did you |
|  | 14 | have any comments at all you wish to make? |
| 15:53:28 | 15 | MR. KAKANI:  No, Your Honor. |
|  | 16 | Thank you. |
|  | 17 | THE COURT:  All right.  Now, remember what I |
|  | 18 | told you:  You wrote me this letter, and you've got some |
|  | 19 | other papers here, but when you have a counsel, you don't |
| 15:53:41 | 20 | write the Court with requests setting out the law. |
|  | 21 | Supplementary -- you wrote something called supplementary |
|  | 22 | bail motion hearing and you sent that to me.  That hasn't |
|  | 23 | been filed, to the best of my knowledge. |
|  | 24 | If you want that -- something filed like that, you |
| 15:54:00 | 25 | talk to your counsel and see if they'll file it, but you |

1  don't file that, so don't send those papers here to me no
2  more like that.
3            THE DEFENDANT: Yes, Your Honor.
4            THE COURT: And you only communicate with me
5  if it's something that you feel is so compelling that you
6  can't do it any other way.
7      Do you understand that?
8            THE DEFENDANT: Yes, Your Honor.
9            THE COURT: All right. Okay. That will be
10 all.
11           MS. KUCHARSKI: Thank you, Your Honor.
12           MR. KAKANI: Have a good afternoon, Judge.
13                       - - -
14      (Proceedings concluded at 3:54 p.m.)
15
16
17            **C E R T I F I C A T E**
18   I certify that the foregoing is a correct transcript
   of the record of proceedings in the above-entitled matter
19 prepared from my stenotype notes.
20   */s/ Sarah E. Nageotte*           *12/5/2021*
     SARAH E. NAGEOTTE, RDR, CRR, CRC           DATE
21
22
23
24
25